OPINION
Karen Minoughan appeals from a final judgment and decree of divorce entered by the Montgomery County Court of Common Pleas, Domestic Relations Division. In particular, Mrs. Minoughan objects to the visitation arrangement and division of marital property effectuated by the trial court.
The procedural history of the case is as follows. The pertinent facts will be discussed in more detail under the assignments of error.
The parties were married in 1987 in Kettering, Ohio. They lived in Virginia prior to January 1998 with their daughter, Caitlin, who was three years old. The parties separated in January 1998, and Mrs. Minoughan and Caitlin moved to the Dayton area to stay with family. Mr. Minoughan subsequently relocated to Salt Lake City to pursue job opportunities.Mrs. Minoughan filed a complaint for divorce in January 1999 and the parties agreed on some issues related to the termination of the marriage, including the fact that Caitlin should reside with Mrs. Minoughan. The trial court conducted a hearing on August 10, 1999 on the unresolved issues, which included the division of some of the parties' assets and debts and the extent of Mr. Minoughan's visitation with Caitlin. The trial court issued a decision resolving these issues on September 29, 1999, and issued its final judgment and decree of divorce on November 12, 1999.
Mrs. Minoughan raises two assignments of error on appeal.
 I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT LIMITING VISITATION TO JUST OHIO AND IN NOT ORDERING A REVIEW HEARING BE HELD PRIOR TO THE MINOR CHILD BEING REMOVED FROM THE STATE OR AREA FOR VISITATION.
Mrs. Minoughan asserts that the trial court erred in awarding overnight and out-of-state visitation to Mr. Minoughan because the factors set forth in R.C. 3109.051(D) and the evidence that Caitlin suffered from separation anxiety weighed against such an order. In addressing this assignment, we will discuss in more detail the evidence presented by the parties on the issue of visitation and the trial court's findings in that regard.
The parties presented conflicting testimony about the frequency of Mr. Minoughan's visits with Caitlin following the parties' separation and the circumstances surrounding the visitation. According to Mr. Minoughan, he had regularly visited or attempted to visit with Caitlin either in person or by phone, but Mrs. Minoughan had limited the duration of the visits, had not been available for phone calls at designated times, or had prohibited him from seeing Caitlin altogether when he had been in town. Mrs. Minoughan testified that there had been fewer attempts at visitation than Mr. Minoughan claimed and that he had not always called at the designated times. She admitted that she had, on occasion, denied Mr. Minoughan visitation when he had been in town because of her own plans with Caitlin and that she had enforced the telephone visitation fairly rigidly, such that if a call from Mr. Minoughan that was scheduled for eight o'clock came after eight-thirty, she would not answer because Caitlin was getting ready for bed at that time. Mrs. Minoughan could recognize calls from Mr. Minoughan using a caller identification system.
Mrs. Minoughan presented evidence that she and Caitlin were very attached and that Caitlin suffered from separation anxiety anytime Mrs. Minoughan left her, as exhibited by fits of crying and screaming. Dr. Paul Etner, a clinical psychologist, testified on Mrs. Minoughan's behalf. Etner opined that Caitlin was very attached to her mother and that out-of-state visits with her father away from her mother could cause Caitlin "very unnecessary emotional trauma." Etner suggested that Caitlin would need to continue to be evaluated, but that it was not likely that he would recommend visits to Mr. Minoughan's Utah home within a year and that regular, week long visits, even in Dayton, would be problematic. According to Etner, some of Caitlin's anxiety was rooted in her father's absence and some was rooted in her mother's return to the workforce. Etner had first seen Caitlin two weeks before the hearing, and he had only spent two to two and one-half hours with her and Mrs. Minoughan prior to the hearing. Mrs. Minoughan also testified that she thought overnight visitation should be postponed because, although she wanted Caitlin to visit with her father, she wanted a "healthy visit" when she felt that Caitlin was mentally prepared for it. Mr. Minoughan testified that Caitlin had not appeared anxious and had not cried on his previous visits with her in Dayton.
The trial court found that a "parent who has moved a distance away from [a] child should not be punished" by withholding visitation, but that a schedule should be developed that can facilitate such visitation. The court also recognized that withholding visitation from one parent can result in "conflict between the parents and perhaps parental alienation." As such, the court ordered visitation as follows: in the month following the trial court's order, Mr. Minoughan was to receive one weekend's visitation with Caitlin, from Friday through Sunday, at his parents' Dayton home; visitation with Caitlin at any time that Mr. Minoughan is visiting his parents in Dayton; an initial extended holiday visit with Caitlin in Dayton for two weeks in January 2000; three weeks per year thereafter of summer visitation at Mr. Minoughan's home in Utah; and telephone visitation two evenings per week. The court cautioned Mrs. Minoughan to abide by the telephone visitation as ordered.
In determining visitation rights, the trial court is required to consider the factors enumerated in R.C. 3109.051(D) and to determine, in its sound discretion, the visitation that is in the best interest of the child. Braatz v. Braatz (1999), 85 Ohio St.3d 40,45. The factors set forth in R.C. 3109.051(D) include: a child's relationships with her parents and siblings; the geographical locations of the parents' residences; the child's age; the child's adjustment to home, school, and community; the parents' willingness to facilitate visitation; whether either parent has established a residence outside the state; and, any other factor in the best interest of the child.
An abuse of discretion involves more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. In re Jane Doe I (1991), 57 Ohio St.3d 135,137; Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. When applying an abuse of discretion standard, a reviewing court is not free to merely substitute its own judgment on factual or discretionary issues for that of the trial court. Buckles v.Buckles (1988), 46 Ohio App.3d 102, 110. A reviewing court will presume that the trial court considered relevant statutory factors in the absence of evidence to the contrary. Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 356; Hilbert v. Hilbert (Sept. 28, 1993), Darke App. No. 1327, unreported.
In our view, the trial court did not abuse its discretion in awarding visitation to Mr. Minoughan as it did. Under the trial court's order, all visitation is to take place in Dayton for at least eight months, during which time Caitlin will have regular contact with Mr. Minoughan by phone and in person. Of course, Mrs. Minoughan may also pursue counseling for Caitlin's separation anxiety during this time in anticipation of the upcoming visit to Utah. This order obviously gave consideration to the evidence that Caitlin might have difficulty with extended visits before she reestablished regular contact with the father. We agree with the trial court's assessment that an indefinite denial of overnight visitation with Mr. Minoughan, as sought by Mrs. Minoughan, would have been punitive, inappropriate, and not in Caitlin's best interest, especially because some of Caitlin's anxiety seemed to have been rooted in her father's absence. The trial court reasonably concluded that, whatever Caitlin's problems, they could best be addressed through regular interaction with both parents.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN SETTING A MONETARY AMOUNT THAT PLAINTIFF/APPELLANT WOULD RECEIVE FROM THE WAL-MART STOCK INSTEAD OF DIVIDING THE STOCK EQUALLY BETWEEN THE PARTIES.
Mrs. Minoughan claims that the trial court acted arbitrarily in dividing the parties' WalMart stock as of March 31, 1998, because the use of that date resulted in an inequitable division of the asset. The stock had been obtained through Mr. Minoughan's employment with WalMart.
The trial court concluded that the de facto termination of the parties' marriage had occurred on March 31, 1998, and, in general, Mrs. Minoughan does not take issue with this finding. In fact, she was relieved of a substantial amount of indebtedness by the use of March 31, 1998 as the end of the marriage for purposes of dividing the parties' assets and debts because Mr. Minoughan accumulated substantial credit card debt during the following year due to an extended period of unemployment. Mrs. Minoughan contends, however, that the use of this date to divide the parties' WalMart stock was inequitable because, by the time of the hearing, the stock had split and had appreciated in value significantly.
In valuing and dividing marital property, a trial court has discretion to choose the time of permanent separation, de facto termination of the marriage, or other appropriate time as the valuation date, although the date of the hearing is normally used.Berish v. Berish (1982), 69 Ohio St.2d 318, 320-321. The trial court's determination will not be reversed on appeal absent unreasonable, arbitrary, or unconscionable conduct. Middendorf v.Middendorf (1998), 82 Ohio St.3d 397, 401.
The parties apparently do not dispute that their WalMart stock was valued at $6,110.04 on March 31, 1998, and that it was valued at approximately $9,600 at the time of trial. The trial court's order related to the stock was as follows:
 [Mrs. Minoughan] shall also receive one half of the WalMart stock valued at $6,110.04[,] or $3,055.02. [Mr. Minoughan] shall transfer sufficient shares of the WalMart stock necessary to equal the sum of $3,055.02 to [Mrs. Minoughan] within 30 days of the filing of final judgment and decree of divorce.
Mrs. Minoughan contends that the trial court should have equally divided the shares, rather than the value of the shares, as of March 31, 1998, or that it should have divided the value of the shares as of the date of the hearing. If it had done so, she would have shared in the appreciation of the stock.
Although dividing the number of shares of WalMart stock held on March 31, 1998, rather than the value of the shares on that date, might also have been reasonable, we cannot say that the trial court abused its discretion in simply dividing the value of the stock on the date of the de facto termination of the parties' marriage. The evidence established that Mr. Minoughan had accumulated at least $9,800 in additional credit card debt for his living and job hunting expenses between the time of the de facto separation and the time of the final hearing. If the trial court had used the date of the hearing to divide the marital assets and debts, Mrs. Minoughan's share of the appreciation of the WalMart stock would have been more than offset by the additional credit card debt for which she would have presumably been held responsible. Mrs. Minoughan's suggestion that the trial court should have used March 31, 1998 as the termination date of the marriage for the division of marital debts while using a later date for division of appreciated assets strikes us as an attempt to have the best of both worlds, an attempt that the trial court was not required to indulge. Based on the evidence presented, the trial court acted reasonably in valuing the parties' assets as well as their debts as of March 31, 1998.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
KERNS, J., concurs.